UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20-cv-34-MOC
(1:16-cr-116-MOC-WCM-1)

| | |
|---|---|
| SETH WILLIS PICKERING, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's *pro se* Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. (Doc. No. 1).

I. BACKGROUND

Petitioner was charged with a single count of first-degree murder for stabbing his six-year-old daughter through the chest. (1:16-cr-116, Doc. No. 8).

Petitioner pled guilty pursuant to a written Plea Agreement in which he admitted his guilt of the charged offense and the parties agreed to a binding sentence to life imprisonment. (Id., Doc. No. 49 at 1-2). The Plea Agreement provides that, if the Attorney General directs the Government to seek the death penalty, Petitioner may withdraw from the Plea Agreement. (Id.). If Petitioner fails to fully comply with any provision of the Plea Agreement, attempts to withdraw the guilty plea is a breach that will relieve the Government of its obligations but will not relieve Petitioner of his obligations under the Plea Agreement or allow him to withdraw his plea. (Id.). The Plea Agreement sets forth Petitioner's sentencing exposure of death or life imprisonment, a $250,000 fine, and no more than five years of supervised release. (Id., Doc. No. 49 at 2). Petitioner stipulated that there is a factual basis for the plea and that the Court may use the offense conduct set forth in

1

the written Factual Basis to support the plea, except as to facts to which Petitioner specifically objects. (Id., Doc. No. 49 at 3). Petitioner agreed to waive his right to withdraw the plea once the Court accepted it, the rights to be tried by a jury, to be assisted by an attorney at trial, to confront and cross-examine witnesses, and not to be compelled to incriminate himself. (Id., Doc. No. 49 at 4). The Plea Agreement expressly waives Petitioner's appellate and post-conviction rights to challenge his conviction or sentence except for claims of ineffective assistance of counsel and prosecutorial misconduct. (Id.).

The Factual Basis provides:

> On September 9, 2016, SETH WILLIS PICKERING was camping on the Blue Ridge Parkway, in Buncombe County, in the Western District of North Carolina, **within the special maritime and territorial jurisdiction of the United State**s. PICKERING was then 36 years old.
>
> PICKERING's six-year-old daughter, Lila Pickering, was with him and she was in his care and control.
>
> Two Blue Ridge Parkway law enforcement Rangers approached PICKERING. Upon doing so, PICKERING stabbed Lila Pickering in the heart with a knife, killing her.
>
> **PICKERING killed Lila willfully, deliberately, maliciously, and with premeditation**.

(Id., Doc. No. 50 at 1) (emphasis added).

A Rule 11 hearing came before the Court on February 9, 2018 at which Petitioner was placed under oath. (Id., Doc. No. 74). Petitioner explained that he is a high school graduate and denied being under the influence of any intoxicating liquors or narcotic drugs. (Id., Doc. No. 74 at 5). The following then transpired:

> Q. Are you presently under the influence of any medicines or drugs of any kind?
> MR. WINIKER: Your Honor, I'll interpose very briefly. My client is under psychological care and does receive some psychological treatment at – including medication at Buncombe County jail. I have spoken to my client this morning, and

in no way do I believe that that medication has impaired his ability to hear and understand or otherwise knowingly enter into this plea this morning.

BY THE COURT:
Q. Mr. Pickering, do you believe that the medications that you're taking in any way impair your ability to understand what is happening today?

A. No, Your Honor.

Q. Are you feeling any effects to that that implicate your ability to understand and make decisions?

A. No, Your Honor.

Q. … Mr. Winiker, you have had an opportunity to be with Mr. Pickering over what period of time?

MR. WINIKER: Your Honor, for the last 18 months I have been with Mr. Pickering for many, many dozens of hours if not hundreds, and in no way do I see any changes in his demeanor, behavior, or anything that would reflect he was under the adverse influences of any medications or anything else.

THE COURT: All right. Do you believe his mind is clear and that he is able to understand the serious plea that's being taken today?

MR. WINIKER: I do, Your Honor.

THE COURT: … Mr. Winiker, would you put down – do you have a list of the drugs he's taking so we can put it in the record?

MR. WINIKER: Your Honor, it is a generic version of Zoloft.
…

Q. Have you taken these medications in the last 48 hours?

A. Yes, Your Honor.

Q. That would be zoloft?

MR. WINIKER: Yes.

THE COURT: Anything else?

MR. WINIKER: No, Your Honor.

BY THE COURT:

Q. Is that right, Mr. Pickering?

A. Yes.

(Id., Doc. No. 74 at 5-7).

Petitioner stated that his mind is clear and that he understands that he is entering a guilty plea that may not be later withdrawn. (Id., Doc. No. 74 at 8). Petitioner reviewed the Indictment with his lawyer and they discussed his decision to plea guilty. (Id., Doc. No. 74 at 8). The Court read the charge and Petitioner confirmed that he was pleading guilty to that offense. (Id., Doc. No. 74 at 9). The Court recited the elements of the offense and the sentencing exposure and Petitioner stated that he understands. (Id., Doc. No. 74 at 10). Petitioner agreed that he discussed how the sentencing guidelines may apply to his case with counsel, but that the agreed sentence reflected in the Plea Agreement would be the one imposed. (Id., Doc. No. 74 at 13). Petitioner stated that he understands and was waiving the rights set forth in the Plea Agreement including the right to a trial, the assistance of an attorney, the presumption of innocence, the right not to be required to testify, and the Government's burden of proof. (Id., Doc. No. 74 at 14). Petitioner also stated that he understands the consequences of his plea including the ability to vote, hold public office, serve on a jury and possess a firearm. (Id., Doc. No. 74 at 15). Petitioner admitted that he committed the acts described in the Indictment. (Id., Doc. No. 74 at 14-15). Petitioner read the Plea Agreement, went over it with counsel, and fully understands all its terms. (Id., Doc. No. 74 at 15). The prosecutor recited the Plea Agreement's essential terms, including the appeal and post-conviction waiver, which Petitioner stated he understands, and Petitioner confirmed that he had signed the Plea Agreement. (Id., Doc. No. 74 at 17-18). Petitioner stated he understands that, if the Court accepts the Plea Agreement, the sentence contained in the Plea Agreement will become binding on the Court. (Id., Doc. No. 74 at 18). The prosecutor read the Factual Basis in open court which

Petitioner stated that he signed and agreed to. (Id., Doc. No. 74 at 18-20). Petitioner confirmed that he voluntarily entered into the plea as follows:

> Q. Is your willingness to plead guilty the result of prior discussions between you and your attorney?
>
> A. Yes, Your Honor.
>
> Q. **Have you had ample time to discuss with your attorney any possible defense you may have to the charges, and have you told your attorney everything you want him to know – either one of them to know about the case?**
>
> A. **Yes, Your Honor.**
>
> Q. **Are you entirely satisfied with the services of your attorneys?**
>
> A. **Yes, Your Honor.**
>
> Q. Are you telling the Court that you know and understand fully what you're doing, that you've heard and understand all parts of this proceeding, and you want the Court to accept your plea of guilty?
>
> A. Yes, Your Honor.
>
> Q. Do you have any questions, statements or comments to make about anything brought up or discussed in the course of this proceeding?
>
> A. No, Your Honor.

(Id., Doc. No. 74 at 20-21) (emphasis added).

> The Court then asked the parties to explain the process by which the plea transpired:
>
> THE COURT: All right. Before the Court accepts the plea I'd like a little bit of – to put on the record with regard to what process you went through in order to arrive at this decision between the parties.
>
> MR. PRITCHARD: Your Honor, the parties obviously have discussed this. There was a plea offer that was –
>
> THE COURT: First, this has to go up to the Attorney General of the United States.
>
> MR. PRITCHARD: Correct.
>
> THE COURT: That process was followed.

> MR. PRITCHARD: It was, Your Honor.
>
> THE COURT: After the government went up and gave its presentation, the defense was offered an opportunity to go up were they not?
>
> MR. PRITCHARD: They were. Actually, we were there simultaneously. They actually made their presentation before – the government did – to the panel, and then the panel spoke to the government while the defense attorneys were not present.
>
> THE COURT: That panel evaluates cases up in Washington in order to keep some sort of consistencies across the country as to which cases the death penalty is being asked to be given in. is that correct?
>
> MR. PRITCHARD: That's correct, Your Honor. The panel made a recommendation that, I believe, then went to the Deputy Attorney General, and he made a recommendation and it was presented to Attorney General Sessions who is the – has the only vote that counts.
>
> THE COURT: Okay. So the decision was made by the government to offer this plea; is that correct?
>
> MR. PRITCHARD: That's correct. **The Attorney General authorized us to make this plea**.
>
> THE COURT: Thank you. I wanted there to be something on the record as to what the process was, and why we reached this kind of thing before the Court gets involved in accepting a plea. Because once the Court's going to accept that plea the Court's going to be bound by that. And I just wanted it for the record that the process was followed and that both parties were wanting this sentence. Is that right?
>
> MR. WINIKER: Your Honor, it is. In addition, **as authorized by our client, we were authorized to make this offer to the government, which we did at the time of the – of our meeting at DOJ**.

(Id., Doc. No. 74 at 22-23) (emphasis added).

The Court concluded that the plea was knowingly and voluntarily made and that Petitioner understands the charges, potential penalties, and the consequences of his plea. (Id., Doc. No. 74 at 24). The Court also concluded that there is a factual basis and accepted the guilty plea, making the Government's sentencing recommendation binding on the Court. (Id., Doc. No. 74 at 24). The

6

Court further noted that Petitioner signed a document indicating that he does not wish to be interviewed by probation and that the Presentence Investigation Report ("PSR") would be expedited, and Petitioner stated he understands. (Id., Doc. No. 74 at 24-25).

The PSR calculated the base offense level as 43 because the offense is a violation of 18 U.S.C. § 1111 pursuant to U.S. Sentencing Guidelines § 2A1.1(a). (Id., Doc. No. 59 at ¶ 14). Two levels were added for a vulnerable victim pursuant to § 3A1.1(b)(1). (Id., Doc. No. 59 at ¶ 16). Three levels were deducted for acceptance of responsibility, resulting in a total offense level of 42. (Id., Doc. No. 59 at ¶¶ 21-23). Petitioner had one criminal history point and a criminal history category of I. (Id., Doc. No. 59 at ¶ 28). The resulting guidelines range was 360 months to life imprisonment, however, the statuorily required minimum sentence for this offense is lif, so the guideline term of imprisonment is life. (Id., Doc. No. 59 at ¶ 51).

Sentencing came before the Court on August 31, 2018. (Id., Doc. No. 76). Petitioner stated in open court that he recalled the Rule 11 proceeding, read the PSR, understood it, and discussed it with counsel. (Id., Doc. No. 76 at 3). Defense counsel's only remaining objection was to the restitution amount. (Id., Doc. No. 76 at 3-4). The parties agreed with the guidelines sentencing range of life and the defense expressed gratitude to the Government for refraining to seek the death penalty. (Id., Doc. No. 76 at 6-7). Petitioner chose to address the Court. He admitted that he murdered his daughter and explained that he did so because he was in a paranoid psychotic delusion, and believed he was doing the right thing and an act of mercy. (Id., Doc. No. 76 at 17).

The Court considered the § 3553 factors and sentenced Petitioner to the agreed statutory minimum sentence of life imprisonment. (Id., Doc. No. 76 at 29); (Id., Doc. No. 63) (Judgment); (Id., Doc. No. 75) (Amended Judgment modifying restitution order).

Petitioner argued on direct appeal that: (1) the Court lacked jurisdiction over the case because there was insufficient evidence that he committed the offense within the special maritime and territorial jurisdiction of the United States; (2) the appeal waiver does not bar this jurisdictional argument because jurisdiction cannot be waived; and (3) the Court failed to ensure that there was a factual basis for finding that Petitioner committed the offense within the special maritime and territorial jurisdiction of the United States before accepting the guilty plea. The Fourth Circuit dismissed in part and affirmed in part on June 24, 2019. It found that the Court did not plainly err by determining that there was a factual basis for Petitioner's plea and dismissed the remaining claims because they are covered by the appeal waiver. United States v. Pickering, 771 Fed. Appx. 287 (4th Cir. 2019).

Petitioner filed the instant § 2255 Motion to Vacate on January 23, 2020.[1] Petitioner argues that the guilty plea was not knowingly and voluntarily entered, there was no factual basis for the guilty plea, and counsel was ineffective for misinforming him about a viable insanity defense. Petitioner asks the Court to vacate his sentence and that he be granted an evidentiary hearing and discovery.

## II. STANDARD OF REVIEW

A federal prisoner claiming that his "sentence was imposed in violation of the Constitution or the laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

---

[1] Houston v. Lack, 487 U.S. 266, 276 (1988) (establishing the prison mailbox rule).

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without a response from the Government or an evidentiary hearing based on the record and governing law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

### III. DISCUSSION[2]

**(1) Voluntariness of the Guilty Plea**

Before accepting a guilty plea, a district court must conduct a plea colloquy in which it informs the defendant of, and determines if the defendant comprehends, the nature of the charge to which he is pleading guilty, the maximum possible penalty he faces, any mandatory minimum penalty, and the rights he is relinquishing by pleading guilty. Fed. R. Crim. P. 11(b)(1); United States v. DeFusco, 949 F.2d 114, 116 (4th Cir. 1991). The court must also ensure that the plea is supported by an independent factual basis and is not the result of force, threats, or promises outside the plea agreement. Fed. R. Crim. P. 11(b)(2), (3).

The Court complied with Rule 11 by asking Petitioner, under oath, whether he understood the nature of the charges, that his sentence would be life imprisonment, and the consequences of pleading guilty including the rights he was waiving by pleading guilty. Petitioner stated that he understood and specifically agreed to waive his appellate and collateral review rights except for claims of prosecutorial misconduct and ineffective assistance of counsel. The plea was supported by a factual basis and Petitioner stated under oath that he was pleading guilty because he is guilty

---

[2] Petitioner's claims have been consolidated, restated, and renumbered. Any claim or subclaim contained in Petitioner's lengthy Motion to Vacate not expressly addressed in this Order has been considered and rejected.

9

and that the plea was not due to threats, coercion, or promises other than those contained in the Plea Agreement. Petitioner further stated that he was fully satisfied with his lawyers' services. Petitioner's present unsupported allegations that his plea was not knowingly and voluntarily entered are rejected. Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); see, e.g., United States v. Lemaster, 403 F.3d 216, 221–22 (4th Cir. 2005) (§ 2255 petitioner's sworn statements during the plea colloquy conclusively established that his plea agreement and waiver were knowing and voluntary).

Petitioner's challenge to the voluntariness of his plea is therefore denied.

**(2)** **Factual Basis**

Petitioner contends that the factual basis for his plea was "negated" by evidence of his mental health history, background, and family circumstances. (Doc. No. 1 at 5).

"[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." United States v. Willis, 992 F.2d 489, 490 (4th Cir. 1993). Thus, after a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Blackledge v. Perry, 417 U.S. 21, 29-30 (1974). Rather, he is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." Id.

An appellate waiver is generally enforceable where the waiver was knowingly and voluntarily made. United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992). The Fourth Circuit does not distinguish between the enforceability of a waiver of direct-appeal rights from a waiver

of collateral-attack rights in a plea agreement. See Lemaster, 403 F.3d at 216. There are narrow exceptions to the enforceability of plea waivers such that "even a knowing and voluntary waiver of the right to appeal cannot bar the defendant from obtaining appellate review of certain claims." United States v. Johnson, 410 F.3d 137, 151 (4th Cir. 2005). For instance, because "a defendant who waives his right to appeal does not subject himself to being sentenced entirely at the whim of the district court[,] ... a defendant could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Marin, 961 F.2d at 496 (emphasis added).

Petitioner waived this claim by entering his knowing and voluntary guilty plea. See Section (1), *supra*. This claim was also waived by the enforceable post-conviction waiver contained in the Plea Agreement that is not subject to any exception. This claim will therefore be dismissed and denied.[3]

**(3)** **Ineffective Assistance of Counsel**

Petitioner raises several claims of ineffective assistance of counsel that will be addressed in turn.

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. Const. Amend. VI. To show ineffective assistance of counsel, Petitioner must first establish deficient performance by counsel and, second, that the deficient performance prejudiced him. Strickland v. Washington, 466

---

[3] To the extent that the instant claim overlaps with the challenge to the plea's factual basis that Petitioner raised on direct appeal, it is not cognizable in this post-conviction proceeding. See United States v. Dyess, 730 F.3d 354, 360 (4th Cir. 2013) (It is well settled that a criminal defendant cannot "circumvent a proper ruling ... on direct appeal by re-raising the same challenge in a § 2255 motion.") (quoting United States v. Linder, 552 F.3d 391, 396 (4th Cir. 2009)); see also United States v. Roane, 378 F.3d 382, 396 n. 7 (4th Cir. 2004) (noting that, absent "any change in the law," defendants "cannot relitigate" previously decided issues in a § 2255 motion); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir.1976) (holding criminal defendant cannot "recast, under the guise of collateral attack, questions fully considered by this court [on direct appeal]").

11

U.S. 668, 687-88 (1984). The deficiency prong turns on whether "counsel's representation fell below an objective standard of reasonableness ... under prevailing professional norms." Id. at 688. A reviewing court "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 689). The Strickland standard is difficult to satisfy in that the "Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." See Yarborough v. Gentry, 540 U.S. 1, 8 (2003). The prejudice prong inquires into whether counsel's deficiency affected the judgment. See Strickland, 466 U.S. at 691. A petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In considering the prejudice prong of the analysis, a court cannot grant relief solely because the outcome would have been different absent counsel's deficient performance, but rather, it "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008).

Where a defendant enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was "within the range of competence demanded by attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). To satisfy Strickland's prejudice prong, the defendant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. If the petitioner fails to meet this burden, a

12

"reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), *vacated on other grounds*, 218 F.3d 310 (4th Cir. 2000).

First, Petitioner argues that counsel abandoned a meritorious insanity defense despite Petitioner's wish to pursue such a defense. Petitioner contends that he told his lawyers during the entire pre-trial period that he wanted to pursue an insanity defense, that two mental health experts supported an insanity defense, that counsel pressured him to plead guilty and downplayed the conditions he would face in prison, and that counsel abandoned an insanity defense for no logical reason, and told Petitioner that he would be found guilty based on the crime scene evidence. Counsel finally "broke" Petitioner and got him to agree to plead guilty by showing Petitioner graphic evidence from the crime scene. Petitioner argues that, but for counsel's misadvice, he would have gone to trial and there is a strong possibility that he would have been acquitted of first-degree murder by reason of insanity based on the evidence presented at the sentencing hearing.

The record reflects that Petitioner knowingly and voluntarily pled guilty to murdering his daughter with premeditation and admitted his guilt of that offense. Any suggestion that he did not satisfy the elements of the offense or lacked the requisite intent is conclusively refuted by the record. See Sections 1-2, *supra*. Further, the Rule 11 hearing transcript belies Petitioner's present self-serving claim that he wanted to pursue an insanity defense and proceed to trial. See (1:16-cr-116, Doc. No. 74 at 22-23) (defense counsel stating in open court that Petitioner authorized counsel to make the plea offer to the Government); (Id., Doc. No. 74 at 20-21) (Petitioner stating in open court that he was pleading guilty freely and voluntarily).

The record further reflects that counsel's alleged coercion was nothing more than sound legal advice. Counsel achieved the minimum possible sentence that Petitioner could have received if he was convicted following a jury trial. There was a great probability, based on the evidence and

the horrific facts of the case, that Petitioner would have been convicted and sentenced to death had he proceeded to trial. Counsel cannot be deemed ineffective for recommending that he plead guilty to this offense, for which he has admitted his guilt, in order to obtain the lowest possible sentence under the law and avoid a likely death sentence.

Second, Petitioner contends that counsel never explained the elements of first-degree murder, the Government's burden of proof, or the burden of proof for an insanity defense. Assuming *arguendo* that Petitioner's excellent counsel failed to inform him of the elements of the offense and the Government's burden of proof, any such deficiency was cured by the Court during the Rule 11 hearing at which it explained the relevant statute, its elements, and the Government's burden at trial. (1:16-cr-116, Doc. No. 74 at 10). Petitioner further confirmed, under oath, that he discussed "any possible defenses" with counsel and is entirely satisfied with counsel's services. (Id., Doc. No. 74 at 20). Petitioner's self-serving and unsupported claims to the contrary are rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221–22.

Petitioner appears to argue that counsel was ineffective for allowing him to plead guilty where the only information that supported a factual basis for the plea was that which was read by the Court, nothing else supports the elements of first-degree murder, and no factual basis supports that the murder wasa willful, deliberate, malicious, and premeditated. This claim is conclusively refuted by the record. Petitioner pled guilty to first-degree murder after listening to the Court read out the charge, its elements, and the Factual Basis in open court during the Rule 11 hearing. The Factual Basis specifically states that the murder was willful, deliberate, malicious, and premeditated. (1:16-cr-116, Doc. No. 50 at 1). Petitioner knowingly and voluntarily pled guilty to the offense as charged and admitted all its elements. His present self-serving claim of an

14

insufficient factual basis is rejected. See Blackledge, 431 U.S. at 74; Lemaster, 403 F.3d at 221–22.

Petitioner next contends that counsel was ineffective at the sentencing hearing by presenting evidence that supported an insanity defense and negated the factual basis for his guilty plea to first-degree murder. Petitioner testified at sentencing that he murdered his daughter because he did not think he had any choice and was in a paranoid psychotic delusion. He claims that he did not realize what he had done until months later after receiving mental health treatment and medication. Petitioner also faults counsel for failing to object when the Court stated at sentencing that the case shows a selfish killing without regard to Petitioner's mental state and there no excuse for what happened.

Petitioner's arguments that there was an inadequate factual basis to support the plea and that he had a meritorious insanity defense are meritless for reasons already discussed. See Sections (1)-(2), *supra*. Counsel was not ineffective for failing to object to the Court's statements at sentencing because they are supported by the facts before the Court and were part of its § 3553 considerations. Moreover, the Court's view of the evidence had no practical impact on Petitioner, as it was bound by the statutorily required sentence of life imprisonment, to which all parties agreed.

Petitioner's ineffective assistance claims also fail because Petitioner has failed to establish that he was prejudiced by counsel's allegedly deficient performance. Defense counsel obtained special permission from the Attorney General to waive the death penalty and agree to the minimum possible sentence of life imprisonment. Counsel's extraordinary efforts likely saved Petitioner's life. Petitioner has admitted that he murdered his daughter and, by his own admission, the evidence was so disturbing that it "broke" him and convinced him to plead guilty. He has failed to

demonstrate a reasonable probability that he would have pled not guilty and proceeded to trial but for counsel's allegedly deficient performance. And if he had gone to trial, the overwhelming likelihood is that the jury would have convicted him and recommended the death penalty.

In short, Petitioner's claims are conclusively refuted by the record, including his own sworn statements in open court, and there is no reasonable probability that he would have gone to trial and faced an all but certain death sentence but for counsel's alleged deficiencies.

## IV. CONCLUSION

For the foregoing reasons, the Court will dismiss and deny Petitioner's § 2255 Motion to Vacate.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, (Doc. No. 1), is **DISMISSED** and **DENIED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

3. The Clerk is instructed to close this case.

Signed: March 30, 2020

Max O. Cogburn Jr
United States District Judge